IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

------------------------------------------------- :
 : CASE NO. 1:14 CV 01497
THOMAS C. DiBIASE, :
 :
 Petitioner :
 :
 -vs- : MEMORANDUM OF OPINION AND
 : ORDER DENYING THE PETITIONER'S
 : PETITION FOR THE WRIT OF
BENNIE KELLY, : HABEAS CORPUS
 :
 Respondent.
-------------------------------------------------

UNITED STATES DISTRICT JUDGE LESLEY WELLS

On July 21, 2011, a Lake County jury convicted the petitioner Thomas C. DiBiase of two counts of burglary (one of them with a firearm specification), two counts of receiving stolen property, and two counts of engaging in a pattern of corrupt activity. On July 8, 2014, after unsuccessful appeals in state court, Mr. DiBiase filed a Petition for the Writ of Habeas Corpus in federal court, seeking relief on two grounds: that the evidence was insufficient to sustain his convictions; and that his appellate lawyer provided ineffective assistance of counsel.

Mr. DiBiase's petition was referred to United States Magistrate Judge Vernelis K. Armstrong for preparation of a report and recommendation pursuant to Local Rule

72.2(b)(2). In an R&R issued 11 February 2015, the magistrate judge concluded that Mr. DiBiase's claim that his appellate counsel provided ineffective assistance of counsel should be rejected on the merits. The magistrate judge also concluded that the evidence was sufficient to support Mr. DiBiase's convictions for engaging in a pattern of corrupt activity and receiving stolen property. However, the magistrate judge agreed with the petitioner that on habeas review the evidence was insufficient to support his convictions for burglary and burglary with a firearm specification. On that basis, she recommended that the Court:

> (1) Reverse the judgment of the trial court as to Count 3–burglary of the Stewart structure and Count 5-burglary of the Ivancic structure with a firearm-within.
>
> (2) Remand the case with instructions that the trial court order Petitioner released from state custody unless the State of Ohio commences a new trial within 180 days of the final district court judgment in this case.

(Report and Recommendation, Doc. 21, p. 26).

The respondent filed timely objections to the recommendations and analysis of the magistrate judge with respect to the petitioner's sufficiency of the evidence challenge. The petitioner responded. Upon *de novo* consideration of the issue, the Court finds the respondent's objections well-taken. In this instance, the question presented is whether the state court's rejection of Mr. DiBiase's sufficiency of the evidence claim "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." See 28 U.S.C. § 2254. As described in more detail below, the state court's decision was neither contrary to, nor did it involve an unreasonable application of, clearly established Supreme Court precedent. The Court, therefore, respectfully declines to accept the

2

magistrate judge's recommendation to the contrary.

On the other hand, neither party has objected to the magistrate judge's conclusion that the petitioner's ineffective assistance of appellate counsel claim has no merit. Nor has either party objected to the magistrate judge's conclusion that the evidence supported Mr. DiBiase's convictions for engaging in a pattern of corrupt activity and for receiving stolen property. This Court, finding no clear error as to these recommendations, will accept them. Therefore, and for the reasons described below, Mr. DiBiase's petition will be denied in its entirety.

I.

This Court makes "a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the Magistrate Judge." Local Rule 72.3(b). The failure by either party to file specific objections constitutes a waiver of the right to appeal the magistrate's recommendations. Thomas v. Arn, 474 U.S. 140, 155 (1985); Howard v. Sec'y of Health & Human Servs., 932 F.2d 505, 508–09 (6th Cir.1991).

II.

Pursuant to the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"),

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable

3

> application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254.

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 412-13 (2000)). "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. at 413. "Mixed questions of law and fact are reviewed under the 'unreasonable application' prong." Biros v. Bagley, 422 F.3d 379, 386 (6th Cir. 2005). "Factual findings made by the state court, or by state appellate courts based upon the trial record, are presumed to be correct but may be rebutted by clear and convincing evidence." Id.

### III.

The magistrate judge concluded that the record does not support Mr. DiBiase's convictions for burglary. And, on this basis, the magistrate judge recommended that this Court conditionally grant the writ, ordering the respondent to release the petitioner from state custody, unless the State of Ohio commences a new trial within 180 days. The respondent objects to the recommendation on the ground that the magistrate judge

4

failed to properly pay deference to the state court judgment under AEDPA.

The Court agrees. In a sufficiency of the evidence challenge, this Court is bound by two layers of deference. First, the Court must view the evidence in the light most favorable to the prosecution and determine whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). The Court does not "weigh the evidence, consider the credibility of witnesses, or substitute our judgment for that of the jury." United States v. Hilliard, 11 F.3d 618, 620 (6th Cir.1993). Second, even if the Court "were to conclude that a rational trier of fact could not have found a petitioner guilty beyond a reasonable doubt, on habeas review," the Court still defers "to the state appellate court's sufficiency determination as long as it is not unreasonable." Brown v. Konteh, 567 F.3d 191, 205 (6th Cir. 2009); See 28 U.S.C. § 2254(d)(2).

In this case, Mr. Dibiase was convicted of burglary on a complicity theory. In Ohio, "[t]o support a conviction for complicity by aiding and abetting pursuant to R.C. 2923.03(A)(2), the evidence must show that the defendant supported, assisted, encouraged, cooperated with, advised, or incited the principal in the commission of the crime, and that the defendant shared the criminal intent of the principal. Such intent may be inferred from the circumstances surrounding the crime." State v. Johnson, 754 N.E.2d 796, 797 (Ohio 2001). In the Court's view, there is sufficient evidence on the record to support Mr. DiBiase's conviction, and, as such, the state appellate court's conclusion was not unreasonable.

The following facts, derived from the state court record, support Mr. DiBiase's convictions for burglary and burglary with a firearm specification, based on a complicity

5

theory. After a rash of burglaries in the Lake County area which demonstrated the same *modus operandi*, investigators theorized that the burglaries were committed by a team of people who cased the homes, burglarized them, and then sold the stolen items in pawn shops. Three of those burglaries are pertinent in this case. In February 2010, the Richey home was burglarized. Stolen items included a television, jewelry and jewelry boxes, and cash. The Richeys later located one of the stolen items at a pawn shop in Euclid, Ohio. It was determined that a man named Dale McNaughton, a principal offender, sold the items. The second burglary occurred on March 2, 2010 at the Stewart residence. Stolen items included jewelry, jewelry boxes, personal records, and collectible coins. Investigators determined that the burglar broke in through a side door using a pry bar which was later found, pursuant to a search warrant, in a silver Buick which petitioner Mr. DiBiase was known to drive. Footprints which matched shoes worn by Dale McNaughton were discovered in the snow outside the Stewart home. On March 12, 2010, the Ivanic home was burglarized. Stolen items included jewelry, coins, cash, and a black Luger handgun.

     After it was determined that some of the stolen items were sold to Great Lakes Coin and Jewelry, investigators spoke to the owner, Mr. Ponsart. The owner was familiar with the petitioner Mr. DiBiase and Dale McNaughton. Mr. Ponsart stated that both men, sometimes individually, sometimes together, sold items at his store on numerous occasions. He also described the two men as a team, and he often saw them arrive at his shop driving a silver Buick. The record shows that rings stolen from the Stewart residence were sold by McNaughton to Great Lakes Coin.

     Investigators learned petitioner Dibiase's and McNaughton's addresses. The two

6

men lived on the same street, ten houses apart. Investigators conducted a drive-by and observed a Silver Buick parked in Mr. DiBiase's driveway.

After officers obtained a search warrant for the silver Buick, they uncovered more inculpatory evidence, including a spiral-bound notebook with the words "Anti-abortion" hand-printed on the cover[1]; Mr. McNaughton's driver's license; various items of jewelry; a receipt with the name of a Geauga county resident whose home had been burglarized in a similar manner to the three Lake County burglaries; and the aforementioned blue pry bar. The Lake County crime lab matched the pry bar found in the silver Buick to impressions made on the window and sliding door of one of the burglarized homes.

Officers obtained search warrants for Mr. Dibiase's and McNaughton's residences. Jewelry taken from the Stewart home was found in Mr. DiBiase's bedroom. Personal documents and jewelry boxes belonging to Ms. Stewart were found in Mr. McNaughton's home.

Cell phone records show that DiBiase was present in the area where the burglaries occurred at the time of the break-ins. The records also show multiple calls between Mr. DiBiase and McNaughton on the days that the burglaries took place. The silver Buick, which Mr. DiBiase was known to drive, was seen in the vicinity of the

---

[1] It appears the notebook relates to the burglars' *modus operandi*, which included casing homes by going door to door and requesting that the resident sign a "petition." One witness stated that Dale McNaughton knocked on her door asking that she sign a petition to show her opposition to casinos in Ohio. The witness observed that Mr. McNaughton was carrying a spiral bound notebook with the words "No Casinos in Ohio" on the cover. The witness declined McNaughton's request. During her testimony she remembered thinking it a strange encounter, since the casino issue had already been decided in Ohio.

burglaries when they occurred. McNaughton was seen near the Stewart burglary getting into a silver Buick.

On March 15, 2010, petitioner Mr. DiBiase was taken into custody in relation to another criminal matter. Jailhouse recordings obtained by the police revealed conversations between the petitioner and his son, Sergio Reynolds, and Patricia Hale, Mr. McNaughton's girlfriend. On March 19, 2010, Mr. Reynolds informed the petitioner that he "did shit last night with [McNaughton]" on Fairmount, that he had given Mr. McNaughton money, and that McNaughton was not answering his phone. Mr. DiBiase advised Mr. Reynolds to say nothing further on the phone. It was determined by the Geauga County Sheriff's Office that there had been a burglary on Fairmount the night before. In another conversation, Mr. DiBiase pressed Mr. Reynolds as to whether he had spoken to the police. During a call between Ms. Hale and Mr. DiBiase, Ms. Hale spoke in code about where the Luger was hidden in Mr. DiBiase's home.

Based on the above-described evidence, this Court agrees with the state appellate court's conclusion that Mr. DiBiase's sufficiency of the evidence claim has no merit. The state appellate court reasoned as follows:

> {¶41} The evidence presented by the state at trial painted a picture in which Mr. DiBiase purposefully assisted Mr. McNaughton and Mr. Reynolds in the commission of the burglaries by being present in the area during the times the homes were broken into, providing logistical support via the telephone, and picking up the assailant upon leaving the homes with stolen property. Further, Mr. DiBiase accompanied Mr. McNaughton to various pawn shops and precious metal dealers the day after the commission of each of the three burglaries in this case, selling items for cash. Some of those items were identified by their true owners as stolen from their homes. Further, Mr. DiBiase's silver Buick was regularly seen in the vicinity of the burglaries the day of the break-ins. Lastly, some of Ms. Stewart's jewelry was recovered from Mr. DiBiase's bedroom upon execution of the search warrant, further tying him to these crimes. Couple this with the phone conversations he had with Mr. Reynolds and Ms. Hale, which

suggested his knowledge and ultimate complicity in the burglaries, it is impossible to say the jury lost its way in finding Mr. DiBiase guilty.

{¶42} We further find it noteworthy that the jury did not convict Mr. DiBiase of counts one and two of the indictment. This outcome suggests that the jury took its job seriously and engaged in an appropriate weighing of the evidence. It is clear that the jury found the evidence supporting counts three through eight much more compelling, and thus convicted him on those six counts.

(Doc. 11-1 Exhibit 10).

This Court's view, consistent with that of the state appellate court, is that the record evidence amply supports both of Mr. DiBiase's burglary convictions pursuant to Jackson v. Virginia, 443 U.S. 307, 319 (1979). As such, the state court's sufficiency determination was not unreasonable.

## IV.

For the reasons stated above, Mr. DiBiase's petition for the Writ of Habeas Corpus is denied in its entirety. Because reasonable jurists could find it debatable whether the petition presents a valid claim that the evidence was insufficient to support Mr. DiBiase's convictions for burglary and burglary with a firearms specification, the Court will grant a certificate of appealability as to that claim only. As for Mr. DiBiase's remaining claims, the Court certifies there is no basis upon which to grant the certificate of appealability.

IT IS SO ORDERED.

      /s/ Lesley Wells  
UNITED STATES DISTRICT JUDGE

Date: 5 June 2015